Squantum Gardens, Inc., & another *vs.* Assessors of
Quincy & another.

Suffolk.    January 9, 1957. — February 11, 1957.

Present: Wilkins, C.J., Spalding, Williams, Whittemore,
& Cutter, JJ.

*Taxation*, Real estate tax: property of the United States, leased prop-
erty, subleased property, assessment. *Equity Jurisdiction*, Declara-
tory relief, Tax. *Declaratory Judgment. Landlord and Tenant*, Sub-
lease, Taxation. *Real Property*, "Present interest," Future interest,
Leasehold. *Statute*, Retroactive statute, Tax statute. *Equity Pleading
and Practice*, Declaratory proceeding, Decree.

A court of equity might in its discretion entertain a suit by a taxpayer
against the assessors and the collector of taxes of a municipality under
G. L. (Ter. Ed.) c. 231A for a declaratory decree as to the power to
assess local real estate taxes to the taxpayer; and exercise of the
court's discretion to entertain such a suit was proper where important
and novel questions were raised as to local taxation of real estate owned
and leased by the United States.  [443]
The provision of § 6 of the Federal military leasing act of 1947 permitting
State or local taxation of the lessee's interest under leases of Federal
real estate made pursuant to that act applies in instances of property
leased pursuant thereto for the purposes of military housing projects
under the Wherry military housing act.  [445–446]
A lessee of real estate who had subleased it was not "in possession thereof"
within the first proviso in the first sentence of G. L. (Ter. Ed.) c. 59,
§ 11, as appearing in St. 1939, c. 175.  [448]
Assessment of a real estate tax to a lessee of the real estate who had
subleased it was not authorized by the second proviso in the first sen-
tence of G. L. (Ter. Ed.) c. 59, § 11, as appearing in St. 1939, c. 175,
empowering the commissioner of corporations and taxation to grant
permission for the assessment of taxes upon a "present interest" "to
the owner of such interest" and by permission granted by the commis-
sioner for assessment of the tax on the whole fee interest in the prop-
erty to the lessee as "occupant."  [448–449]
The third sentence of G. L. (Ter. Ed.) c. 59, § 11, as appearing in St. 1939,
c. 175, conferred no authority to assess a local real estate tax on the
interest of a lessee in buildings erected on land owned by and leased
to him by the United States.  [450]
The fourth sentence of G. L. (Ter. Ed.) c. 59, § 11, as appearing in St. 1939,
c. 175, conferred no authority to assess a local real estate tax on the
leasehold interest of a lessee of land who had given a mortgage to
finance the construction of housing on the land.  [450]

Following a lease of land by the United States under the Federal military leasing act of 1947, an assessment of a local real estate tax to the lessee upon the whole fee interest in the land and buildings erected thereon would not be consistent with § 6 of the Federal act permitting State or local taxation of the "lessee's interest." [450]

St. 1956, c. 690, effective August 11, 1956, was not applicable to real estate taxes assessed as of January 1 of 1955 and 1956. [452]

In a suit in equity for declaratory relief as to the validity of local real estate tax assessments to the lessee under a lease by the United States of land owned by it, a decree declaring void assessments as of January 1 of 1955 and 1956 and enjoining collection of taxes for those years or for any later year "as long as the United States . . . is the owner . . . and . . . [such lessee] is the lessee" was too broad in view of the possible effect of St. 1956, c. 690, and any further legislation upon assessments for later years; the decree should be limited to the 1955 and 1956 assessments and decline further relief. [454]

BILL IN EQUITY, filed in the Superior Court on January 9, 1956.

The suit was heard by *Morton*, J., on demurrer and on the merits.

*Douglas A. Randall*, City Solicitor, for the defendants.

*Frank B. Wallis*, for Squantum Gardens, Inc.

No argument nor brief for the intervener.

CUTTER, J. Squantum Gardens, Inc. (hereinafter called Gardens, Inc.), is the lessee from the United States of America, for a term of seventy-five years at a rent of $100 per year, of 14.48 acres of land of the former naval air station at Squantum. The lease was designed to bring about the construction of one hundred fifty military housing units under the Wherry military housing act.[1] The defendant assessors (hereinafter called the assessors) assessed with respect to the leased property a real estate tax upon Gardens, Inc. for the year 1955 and at the time of the hearing were intending to assess a similar tax on the property for the year 1956.

---

[1] Title VIII of the national housing act — military housing insurance — 63 U. S. Sts. at Large, 571, U. S. C. (1952 ed.) Title 12, §§ 1748–1748h. See also the military leasing act of 1947, 61 U. S. Sts. at Large, 774, U. S. C. (1952 ed.) Title 34, § 522a, authorizing a leasing of real and personal property surplus to the needs of the armed services.

The United States acquired the land here involved by condemnation in 1941. By St. 1941, c. 541, the Commonwealth ceded jurisdiction (with minor exceptions) over this property subject to the filing of a plan which does not appear ever to have been filed. However, nothing seems to turn on this fact as Gardens, Inc., does not claim that the United States has exclusive jurisdiction over the land.

Gardens, Inc., filed a bill in equity against the assessors and the collector of taxes under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, for a declaratory decree which would determine the power of the assessors and their successors in office to assess to Gardens, Inc., any tax with respect to the leased real estate or any interest therein. Gardens, Inc., also requested that the 1955 assessment with respect to the property be declared void and that subsequent assessments be enjoined. The defendants filed a demurrer asserting, among other grounds, that the bill was insufficient to warrant relief in equity and that Gardens, Inc., had adequate remedies at law by application for abatement of the tax[2] or action at law to recover the tax if paid under protest.[3] The demurrer was overruled.

The United States filed an intervening petition adopting and incorporating by reference "all of the allegations and conclusions" of the bill filed by Gardens, Inc. After hearing on the merits, a final decree was entered declaring void the 1955 tax assessment and the proposed 1956 assessment and permanently enjoining collection of any taxes for these years with respect to this property, or in any later year, "as long as the United States of America is the owner . . . and . . . Gardens, Inc., is the lessee . . . ." The defendants appealed from the final decree and from the interlocutory decree overruling the demurrer. The evidence is reported.

One hundred fifty housing units have been constructed on behalf of Gardens, Inc. These were forty per cent complete at the beginning of 1955 and fully complete at the end of that year. The project was financed by a savings bank mortgage insured by the Federal housing administration. The area [4] is not used for military operations and the general public has access to its streets. Gardens, Inc., as sublessor,

---

[2] G. L. (Ter. Ed.) c. 59, §§ 59–65, inclusive, as amended.

[3] G. L. (Ter. Ed.) c. 60, § 98.

[4] The city of Quincy furnishes, partly without charge and partly with indirect Federal assistance, various services to the housing area and its tenants. These circumstances have no significance with respect to the question of law here involved, whether the Massachusetts tax laws and administrative action in fact comply with the Congressional permission to tax property of the United States which has been leased (see note 1, *supra*).

supplies the usual landlord's services of heat, hot water, maintenance of grounds and janitor service and in fact makes roadways and play areas available to tenants for their use in common, although the use of play areas is not provided for in the subleases. The housing units are rented solely to military personnel approved as tenants by appropriate naval authorities and rates of rental are established by the navy and the Federal housing administration working together. The 1955 tax has not been paid. Permission "to assess the 1955 real estate tax on" this property "owned by the United States government . . . to the occupants . . . Gardens, Inc.," was granted to the assessors by the commissioner of corporations and taxation, purporting to act under G. L. (Ter. Ed.) c. 59, § 11, as appearing in St. 1939, c. 175 (since amended by St. 1956, c. 397, and c. 690, § 2).

1. *Madden* v. *State Tax Commission,* 333 Mass. 734, 735–737, and the cases there cited, establish that a court of equity in its discretion may grant declaratory relief, in a case of this character, despite the existence of remedies at law or by administrative action.[5] Accordingly, the demurrer was properly overruled. See *Burnes* v. *Metropolitan District Commission,* 325 Mass. 731, 733.

There was no error in the exercise by the trial judge of his discretion to grant declaratory relief. Important and novel questions are raised about a municipality's power, under relevant Massachusetts statutes and acts of the Congress, to tax real estate leased by the United States to a private corporation. It is desirable that such questions be decided promptly so that, if necessary, corrective legislation can be sought in the public interest if that course seems appropriate to the affected public bodies. Nothing here said, however, should be construed as indicating that this court approves use of bills for declaratory relief, rather than the appropriate administrative procedures for tax abatement, in cases which involve no special considerations, comparable to those here present and present in the *Madden* case, *supra.*

[5] Such relief was in fact granted also in *Dehydrating Process Co. of Gloucester, Inc.* v. *Gloucester,* 334 Mass. 287.

2. The propriety of the final decree must be determined on the basis of analysis of (a) the applicable acts of the Congress authorizing taxation, by the States and their subdivisions, of property owned by the United States and leased to private corporations and individuals; (b) the Massachusetts statutes authorizing assessment of real estate taxes; and (c) the administrative action taken by the assessors in assessing the taxes here in issue. Property owned by the United States is immune from State and local taxation (*Assessors of Everett* v. *General Electric Co.* 330 Mass. 464, 465–466; *United States* v. *Allegheny County,* 322 U. S. 174, 192; *Kern-Limerick, Inc.* v. *Scurlock,* 347 U. S. 110, 122–123) except, of course, as the Congress may have granted permission for such taxation. See *Kern-Limerick, Inc.* v. *Scurlock, supra,* at pages 116–117, 122; *Offutt Housing Co.* v. *Sarpy County,* 351 U. S. 253, 259–261. Even where Congress has granted such permission, the State and its subdivisions must exercise the taxing power strictly in conformity with the Congressional permission. This principle is illustrated by the long continued and very considerable legislative difficulties encountered over the years in conforming State taxation of national banks (which, of course, are Federal agencies) to the Congressional authorization of their taxation by the States, found in U. S. Rev. Sts. § 5219 (now found in U. S. C. (1952 ed.) Title 12, § 548, as most recently amended by 44 U. S. Sts. at Large, Part 2, 223). See *Commissioner of Corporations & Taxation* v. *Woburn National Bank,* 315 Mass. 505, 506, 515, and authorities there cited; *Commissioner of Corporations & Taxation* v. *Assessors of Boston,* 321 Mass. 90, 92–93; *Austin* v. *The Aldermen,* 7 Wall. 694, 699; *Des Moines National Bank* v. *Fairweather,* 263 U. S. 103, 106 (opinion cited with apparent approval in *Society for Savings* v. *Bowers,* 349 U. S. 143, 147); *Federal Land Bank* v. *Bismarck Lumber Co.* 314 U. S. 95, 101–102; *Reconstruction Finance Corp.* v. *Texas,* 229 Fed. (2d) 9, 12 (C. A. 5, holding that a Congressional waiver of exemption from State and local taxation must be construed strictly), certiorari denied sub

nomine *Texas* v. *Reconstruction Finance Corp.* 351 U. S. 907.[6]

Compliance with the Congressional permission thus has two aspects. It means both (1) that the State tax statute must authorize a tax of the character permitted by the Congress, and (2) that the administrative action of assessment and collection must comply with the Congressional and State statutory authorization.

(a) *The Congressional permission to impose State and local taxes on military housing projects.* Authority for State and local taxation of military housing projects is found in two acts of the Congress and has been judicially recognized in *Offutt Housing Co.* v. *Sarpy County,* 351 U. S. 253, where a bare majority of the Supreme Court of the United States, upon facts in many respects similar to those found in the case at bar, held (at page 258 of the opinion) that the military leasing act of 1947 and the Wherry military housing act (1949), both referred to in note 1, *supra,* "interlock and must be read together"; (at page 259) that the provisions of the military leasing act "govern the leasing of government property generally and its permission to tax extends generally to all lessees' interests created by virtue of the Act" including apparently those for military housing created by leases under the military leasing act to accomplish purposes pursuant to the Wherry act; and (at pages 260–261) that the Congress has decided "that the States were to be permitted to tax private interests . . . in housing projects located on areas subject to the federal power of 'exclusive Legislation'"[7] and "in the exercise of this power, has permitted such state taxation as is involved in the" Nebraska situation there considered. As a consequence of this decision it is settled that the provisions of § 6 of the military leasing act of 1947 are applicable to

[6] See also *First National Bank & Trust Co.* v. *West Haven,* 135 Conn. 191, 192–193. Compare *Reconstruction Finance Corp.* v. *Beaver County,* 328 U. S. 204, 209–210.

[7] The *Offutt Housing Co.* case thus presented a stronger case against finding Congressional permission to tax than exists with respect to the Squantum land here involved where the legislative ceding of jurisdiction appears not to have been completed, see note 1, *supra.*

Federal real estate leased in connection with Wherry act projects for military housing. Section 6 reads: "The *lessee's interest,* made or created pursuant to the provisions of this Act, shall be made subject to State or local taxation. Any lease of property authorized under the provisions of this Act shall contain a provision[8] that if and to the extent that such property is made taxable by State and local governments by Act of Congress, in such event the terms of such lease shall be renegotiated" (emphasis supplied). In view of this provision as construed in the *Offutt Housing Co.* case, either the Commonwealth or the city of Quincy was free, so far as the United States and the Congress were concerned, to impose a property tax upon the leasehold interest of the lessee. The question thus arises whether the Massachusetts statutes, in force as of January 1, 1955, and January 1, 1956, authorized the assessment of taxes upon only the leasehold interest of Gardens, Inc. (as distinguished from the whole fee interest in the real estate).

(*b*) *The relevant Massachusetts statutes.* The applicable statutes are found in G. L. (Ter. Ed.) c. 59. Section 2 of that chapter as appearing in St. 1954, c. 459, § 1, provides that "All property, real and personal, situated within the commonwealth . . . unless expressly exempt, shall be subject to taxation . . . ." Section 3 states that "Real estate for the purpose of taxation shall include all land within the commonwealth and all buildings and other things erected thereon or affixed thereto."[9] Section 5, as amended by St. 1938, c. 47 (but later amended as hereinafter mentioned by St. 1956, c. 690, § 3), provided: "The following property

---

[8] Such a provision (condition 8) was included in the lease here involved, but will have application only in the event that the Congress may hereafter consent to taxation of the interest of the government in addition to the interest of the lessee. *Offutt Housing Co.* v. *Sarpy County,* 160 Neb. 320, 325. *Meade Heights, Inc.* v. *State Tax Commission,* 202 Md. 20, 25. Compare *Conley Housing Corp.* v. *Coleman,* 211 Ga. 835, 837; *Sheridanville, Inc.* v. *Wrightstown,* 125 Fed. Sup. 743, 750–752 (D. C. N. J.).

[9] The provisions of § 3 with respect to mortgaged real estate have no relevance in the present case, where (1) the mortgagee has not taken possession under the mortgage, and (2) the mortgagor is bound to pay the real estate taxes by the terms of mortgage (with the statutory covenants and condition, G. L. [Ter. Ed.] c. 183, §§ 18–20) of the lessee's interest in the property.

and polls shall be exempt from taxation: First, Property owned by the United States so far as the taxation of such property is constitutionally prohibited" (see note 14, *infra*). The provisions directly authorizing assessment of real estate taxes are found in § 11, as appearing in St. 1939, c. 175:[10] "[1st] Taxes on real estate shall be assessed, in the town where it lies, to the person who is the *owner* on January first, and the person appearing of record, in the records of the county . . . where the estate lies, as owner on January first, even though deceased, shall be held to be the true *owner* thereof; [1st proviso] provided, that whenever the commissioner deems it proper he may, in writing, authorize the assessment of taxes upon real estate to the *person who is in possession* thereof on January first, and such person shall thereupon be held to be the true *owner* thereof for the purposes of this section; and [2nd proviso] provided, further, that whenever the commissioner deems it proper he may, in writing, authorize the assessment of taxes upon *any present interest* in real estate to the *owner* of such interest on January first, and taxes *on such interest* may thereupon be assessed to such person. [2nd sentence irrelevant.] . . . [3d] Buildings erected on land leased by the commonwealth under section twenty-six of chapter seventy-five shall be assessed to the lessees, or their assignees, at the value of said buildings.[11] [4th] Except as provided in the three following sections, mortgagors of real estate shall for the purpose of taxation be deemed the *owners* until the mortgagee takes possession, after which the mortgagee shall be deemed the owner" (emphasis supplied).

In our analysis of § 11 we are guided by the well recognized principle of statutory construction that "tax laws are to be strictly construed. The right to tax must be plainly

---

[10] For convenient reference later in this opinion the numbers of the sentences and of the provisos in the first sentence in this section have been inserted in brackets in the text.

[11] Prior to St. 1956, c. 690, effective August 11, 1956, there was no provision in § 11 relating to buildings on leased property of the United States comparable to that in the third sentence relating to buildings erected on land leased by the Commonwealth. See note 16, *infra.*

conferred by the statute. It is not to be implied. Doubts are resolved in favor of the taxpayer." *Cabot* v. *Commissioner of Corporations & Taxation,* 267 Mass. 338, 340. *DeBlois* v. *Commissioner of Corporations & Taxation,* 276 Mass. 437, 438–439. *Riesman* v. *Commissioner of Corporations & Taxation,* 326 Mass. 574, 575. *Commissioner of Corporations & Taxation* v. *Aetna Life Ins. Co.* 328 Mass. 404, 408. The first sentence clearly authorizes no tax assessment to Gardens, Inc., for, on January 1, 1955, and on January 1, 1956, it was neither the owner nor the owner of record of the land and buildings here taxed. In our opinion, the first proviso in the first sentence gives no help, for that proviso merely authorizes the commissioner of corporations and taxation to permit assessment of taxes upon real estate "to the person who is in possession thereof on January first" who is to be regarded as the "owner" for the purposes of the section. It must be regarded now as settled that a lessee of real estate who has sublet portions of it is not to be regarded as in possession of the portions which have been sublet. *Lynde* v. *Brown,* 143 Mass. 337, 340. *Dehydrating Process Co. of Gloucester, Inc.* v. *Gloucester,* 334 Mass. 287, 292.

The purpose of the second proviso in the first sentence of § 11 is somewhat ambiguous. No decided case dealing with its use has been brought to our attention. It purports to permit the commissioner of corporations and taxation to "authorize the assessment of taxes upon any *present interest* in real estate to the owner of such interest" (emphasis supplied). What Gardens, Inc., had on January 1, 1955, and January 1, 1956, was a reversionary interest following the subleases (see *Marcelle, Inc.* v. *Sol. & S. Marcus Co.* 274 Mass. 469, 472) which it had made, at least as to the premises subject to such subleases, although it may have had a "present interest" in any minor portions of the leased property which it had not subleased. Reversions, although they are vested existing estates, generally are now regarded as future interests rather than as present interests. Restatement: Property, §§ 153, 154, especially comment f. Am,

Law of Property, §§ 4.2, 4.5, 4.16 et seq. Newhall, Future Interests (3d ed.) §§ 3, 7. Without more indication than there is in the second proviso[12] of the first sentence of § 11 that the Legislature thereby intended that leasehold reversions following subleases should be regarded as present interests and taxed as separate interests, we cannot hold that such a tax was authorized by § 11 as it stood prior to the enactment of St. 1956, c. 690, and by the permission, already mentioned, granted by the commissioner of corporations and taxation "to assess the 1955 real estate tax on the . . . property owned by the United States government . . . to the occupants . . . Gardens, Inc. . . .." The permission granted by the commissioner, in any event, was in form more appropriate to permission granted under the first proviso of the first sentence of § 11 than to a grant of permission under the second proviso of that first sentence. Also, the permission was not limited to a tax only on the leasehold interest. The commissioner's permission appears to authorize only taxation of the whole fee interest in the property.

For the reasons stated in the preceding paragraph, the second proviso of the first sentence of § 11, and the action under it by the commissioner, do not give warrant for the 1955 and 1956 assessments in this case. Accordingly, it is not necessary to determine whether and to what extent, if at all, the second proviso (a) permits the commissioner to authorize local assessors to assess taxes on less than a fee interest in real estate, and (b) operates as a modification of the traditional view that Massachusetts local property "tax laws do not contemplate the taxation of leaseholds" because "a real estate tax is a tax upon the land as a whole." See *Newton Building Co.* v. *Commissioner of Corporations & Taxation*, 285 Mass. 471, 473–474; *Crocker-McElwain Co.*

---

[12] This language was inserted in the statute by St. 1939, c. 175, on the basis (see 1939 Senate Doc. No. 468) of a recommendation (1939 House Doc. No. 14, par. 11) of the then commissioner of corporations and taxation (see his annual report for the year ending November 30, 1938, at page 136), which aptly refers to the first proviso added in 1939, but gives no explanation of the second proviso.

v. *Assessors of Holyoke,* 296 Mass. 338, 344–345; *Franklin* v. *Metcalfe,* 307 Mass. 386, 389. See *Dehydrating Process Co. of Gloucester, Inc.* v. *Gloucester,* 334 Mass. 287, 293.

Nothing in the third sentence of § 11, as it stood prior to the enactment of St. 1956, c. 690, authorized the assessment of the lessee's interest in buildings on land leased from the United States separately from the land. The third sentence applies only to buildings erected on land leased by the Commonwealth. The absence of any similar provision with respect to buildings erected on lands leased by the United States indicates that no authority was given to tax such buildings separately. See *General Electric Co.* v. *Commonwealth,* 329 Mass. 661, 663–664; *Ianelle* v. *Fire Commissioner of Boston,* 331 Mass. 250, 252–253. The fourth sentence of § 11 also furnishes no basis for imposing a separate tax with respect to the leasehold interest of Gardens, Inc.

The tax authorized to be imposed by the commissioner in his permission, construed as we view it, as a tax on the real estate "on its value as a unit and not upon the interest . . ." of the person assessed" (see the *Crocker-McElwain* case, *supra,* at pages 344–345) is not consistent with taxation permitted by the military leasing act of 1947, § 6, already quoted (see also note 1, *supra*) as construed in *Offutt Housing Co.* v. *Sarpy County,* 351 U. S. 253, 261–262. We think that § 6 and the *Offutt Housing Co.* case permit only taxation of the leasehold interest of the lessee. Our statute in force on January 1, 1955, and January 1, 1956, certainly did not authorize (on any view of § 11, especially the second proviso of the first sentence) any tax on a leasehold interest which was not a "present interest" and, so far as it authorized (under provisions other than the second proviso) taxes on the property here involved to persons other than the owner, permitted taxes only on the full fee interest. Such taxes are not the type of tax imposed by the Nebraska statute considered in the *Offutt Housing Co.* case. See Neb. R. R. S. 1943, § 77–1209, which provides in part, "All *improvements* put on leased public lands shall be assessed to the owner of

such improvements *as personal property, together with the value of the lease . . . .* The taxes imposed *on such improvements* shall be collected by levy and sale of the interest of such owner . . ." (emphasis supplied). In *Offutt Housing Co.* v. *Sarpy County,* 160 Neb. 320, 333–335, affirmed 351 U. S. 253, this provision was held to be applicable to leased public lands of the type involved in that case. There is no possibility of a similar interpretation of the Quincy tax or the Massachusetts tax statutes here involved as taxing only the leasehold interest of Gardens, Inc., as personal property for such a leasehold is not within the definition of taxable personal estate found in G. L. (Ter. Ed.) c. 59, § 4. See also § 18 as amended by St. 1933, c. 254, § 30.[13] See also *Meade Heights, Inc.* v. *State Tax Commission,* 202 Md. 20, 26–28, where the Maryland tax laws permitted taxation of a property interest less than a fee. Since we interpret the 1955 tax actually assessed and the 1956 assessment, as originally proposed, as being taxes on the whole interest (in both land and buildings) with respect to all the taxable real estate here involved, a tax assessed to Gardens, Inc., as lessee under these statutes, will inevitably impose a direct burden on the fee interest of the United States in the land and also upon any reversionary interest of the United States in the buildings which may remain after the term of the lease.

This conclusion is not affected by G. L. (Ter. Ed.) c. 59, § 5, First, and its various amendments[14] prior to St. 1956, c. 690, § 3. Clause First (in each form in which it has appeared) only defines the statutory exemption. It does not

---

[13] Later amendments of § 18 are not relevant.

[14] Clause First originally exempted "Property of the United States." It was amended by St. 1936, c. 81, and later by St. 1938, c. 47. Thereafter clause First read, "Property owned by the United States so far as the taxation of such property is constitutionally prohibited." These amendments plainly were designed to limit the Massachusetts statutory exemption of property of the United States to the minimum constitutionally required. See 1938 House Doc. No. 417. Similarly St. 1956, c. 690, § 3, adding to clause First the words "excepting property which the Congress of the United States has permitted to be subject to local taxation" was designed to rephrase the statutory exemption to take advantage of any Congressional permission to tax which had been or might be granted.

by itself affirmatively authorize any tax on any property or any interest in property, or on a leasehold interest in leased property of the United States.

In the *Offutt Housing Co.* decision (at page 261) Mr. Justice Frankfurter pointed out that, upon the facts there involved,[15] the "lease is for 75 years; the buildings and improvements have an estimated useful life of 35 years. The enjoyment of the entire·worth of the buildings and improvements will therefore be petitioner's." In that case, as has been noted, the tax was only on the improvements, the majority opinion stating in a footnote (at page 262), "To the extent that the estimated useful life of any . . . items" of appliances and furniture "extends beyond the term of the lease, the value attributable to such period must be excluded from the tax, since it represents the Government's ownership interest." Here there is no showing in the record that the useful life of the buildings is less than the lease term, although it probably is, and in any event the whole interest (including that of the United States) in the land will be taxed if the Massachusetts statutes are followed.

The authority of the Quincy assessors to impose the 1955 and 1956 taxes here involved is not helped by St. 1956, c. 690. That statute which took effect on August 11, 1956, is not expressly made retroactive to either January 1, 1955, or January 1, 1956, and the 1955 and 1956 taxes must be assessed as of those days respectively. See *Irving Usen Co. Inc.* v. *Assessors of Boston,* 309 Mass. 544, 545–546. "Statutes imposing taxation are not to be construed as operating retroactively unless the legislative intention is clearly declared." Rugg, C.J., speaking for the court in *Magee* v. *Commissioner of Corporations & Taxation,* 256 Mass. 512, 517. Here there is no indication whatsoever that the Legislature intended any retroactive application, and we hold that the 1956 statute is not now applicable to the 1955 and 1956 assessments.

---

[15] The original record in the *Offutt Housing Co.* case shows that there was evidence (at pages 108, 113) about the useful life of the buildings there involved.

Even if the 1956 statute [16] were to be construed as applicable to the 1955 and 1956 assessments, it is contended in behalf of Gardens, Inc., reading the 1956 amendments together with § 11 as thereby amended, (a) that there would not thereby be authorized a tax only on the leasehold interest of a lessee of real estate and buildings owned by the United States, at least if the lessee has subleased the major part of those buildings, and (b) that there does not yet exist a statutory basis in Massachusetts for a tax in strict compliance with the specific terms of the Congressional permission contained in § 6 of the military leasing act of 1947 and any other similar grants of such permission. Because we hold the 1956 amendments not to be retroactively applicable to the 1955 and 1956 assessments, it is not necessary for us to make any further decision with respect to the interpretation of the 1956 amendments as applied to the 1955 and 1956 assessments. For reasons stated below, we expressly leave open the question of the effect of the 1956 statute on 1957 and subsequent assessments, for it is entirely possible that later Massachusetts legislation applicable to such assessments may remove the basis of possible doubt about their validity.

(c) *The administrative action of the assessors.* In view of our interpretation of the assessments authorized by the Massachusetts statutes (applicable on January 1, 1955, and January 1, 1956, to the taxation of this property) even when viewed in the light of the special authority granted by the commissioner of corporations and taxation, it is not neces-

---

[16] Statute 1956, c. 690, § 1, inserts in G. L. c. 59 a new § 3D reading in part: "Real estate owned and leased by the United States shall be assessed and taxed to the lessee or lessees thereof . . . in the same manner and to the same extent as if the said lessee or lessees . . . were *owners thereof in fee* whenever the Congress of the United States has provided that such interest shall be subject to local taxation . . ." (emphasis supplied). Section 3D also provides for enforcement by sale, not of the real estate, but of the "interest of the lessee or lessees." Section 2 adds to G. L. c. 59, § 11, after the third sentence, a new sentence, "Buildings erected on land leased by the United States shall be assessed to the lessees . . . at the value of said buildings." This provision is not expressly limited to the lessee's leasehold interest in these buildings. Mention (see note 14, *supra*) has already been made of the amendment made by § 3 of the 1956 act.

sary to consider the legal effect[17] of the assessment in fact made.

3. Upon the basis of the Massachusetts tax statutes in force and applicable to the 1955 and 1956 assessments, the final decree entered May 18, 1956, was correct in general purport. The trial judge, of course, had no opportunity to consider the effect, if any, of St. 1956, c. 690, which was not enacted until August, 1956.

We think, in the light of (a) the existence of the 1956 legislation; (b) the fact that we have not had the benefit of full arguments about its effect and scope; and (c) the possibility of further legislation, that the terms of the decree below are too broad. The decree should deal only with the propriety of the assessments of January 1, 1955, and January 1, 1956, as made under the tax legislation then in force. Accordingly, the final decree is to be modified in the Superior Court, in a form consistent with this opinion, which (1) declares the 1955 and 1956 assessments to be illegal and void under the provisions of law applicable on January first of each of those years; (2) enjoins the enforcement of the 1955 assessment, and the making of any 1956 assessment, under the statutes applicable on January first of each of those years to such assessments; and (3) declines to give further declaratory or injunctive relief on the ground that such relief is, or may be, premature. As so modified the final decree is affirmed. The interlocutory decree overruling the demurrer is affirmed. This is not an appropriate case for awarding any costs of appeal.

*So ordered.*

---

[17] The record supports the finding of the trial judge that the "assessment obviously was on the fee." The evidence shows that Gardens, Inc., was assessed "as the owner." The land was assessed in 1955 for $78,850 and the buildings for $460,000. The assessors obviously did not purport to limit the assessment to the present interest of Gardens, Inc., in so much of the land as was not included in subleases to tenants.