EAST CHOP TENNIS CLUB & others *vs.* MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION.

Bristol.    September 21, 1973. — December 24, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Equity Jurisdiction,* Declaratory relief, Administrative matter. *Anti-Discrimination Law. Administrative Matter.*

The Superior Court should have sustained a demurrer to a bill for declaratory relief brought by a club against the Commission Against Discrimination seeking a determination that the club was not a "public accommodation" within G. L. c. 272, § 92A, where the club had not exhausted its administrative remedies, no issue of general public concern had been raised, and a determination of the club's status, necessary for a determination whether the Commission had jurisdiction, depended on facts to be found by the Commission rather than the courts. [446-453]

BILL IN EQUITY filed in the Superior Court on March 15, 1971.

The suit was heard by *Chmielinski,* J., on demurrer, and by *Frank E. Smith,* J., on the merits.

*Joel P. Suttenberg,* Deputy Assistant Attorney General, for the Massachusetts Commission Against Discrimination.

*Vincent L. Hennessey (Douglas Smerdon* with him) for the plaintiffs.

QUIRICO, J. This bill in equity is for both declaratory and injunctive relief under G. L. c. 231A. The plaintiffs are the East Chop Tennis Club and the club's president, vice-president and treasurer (hereinafter collectively called the club); the defendants are the Massachusetts Commission Against Discrimination and its commissioners (hereinafter called the commission). The club seeks a declaratory decree that it is not a public accommodation within the purview of G. L. c. 272, § 92A, which prohibits certain types of discrimination in such facilities, and a permanent injunction restraining the

commission from continuing proceedings against the club and its officers.

The commission filed a demurrer alleging as a ground that the court lacked jurisdiction over the suit. A judge of the Superior Court overruled the demurrer and the case was heard on the merits. Thereafter, a final decree was entered, declaring that the club was a private facility and not a place of public amusement or accommodation within the scope of G. L. c. 272, § 92A, and ordering the commission, its agents, servants and employees to cease and desist from further proceedings against the club. The commission appeals from both the interlocutory decree overruling its demurrer and the final decree.

We summarize the pertinent facts leading up to the filing of the club's bill for declaratory relief in the Superior Court, as alleged in the bill and documents incorporated therein and admitted by the commission in its answer. On September 1, 1970, the commission sent a notice to the club which indicated that an investigation was being conducted pursuant to a complaint that the club's membership policies tended "to discriminate against and restrict from membership black and/or Spanish-speaking applicants in violation of . . . [G. L. c.] 272, § 98 . . .." On December 15, 1970, the club's president appeared before the commission's investigating commissioner for an informal conference and at that time filed an answer which denied every allegation of the complaint, alleged that the club was a private club not within the scope of G. L. c. 272, §92A, and requested that the complaint be dismissed as a matter of law.[1]

---

[1]General Laws c. 272, § 92A, as amended by St. 1953, c. 437, defines the term "place of public accommodation, resort or amusement" as "any place . . . which is open to and accepts or solicits the patronage of the general public"; G. L. c. 272, § 98, as amended through St. 1963, c. 613, § 5, makes it a crime for anyone to discriminate with respect to the admission or treatment of persons in a "place of public accommodation," as defined in § 92A. As stated, in its notice of investigation sent to the club the commission cited c. 272, § 98, as the statute which the club allegedly violated. It is true that a preliminary determination of whether the club comes within the scope of the definition given in § 92A is necessary before determining its liability under § 98. However, this fact does not resolve the more important question whether the commission or the Superior Court should initially make such preliminary determination.

Thereafter, on February 5, 1971, the commission, through its investigating commissioner, sent the club president a copy of its complaint against the club. This document was in the form of a letter to him which (1) stated that the investigating commissioner had found probable cause to credit the allegations in the complaint and had made the determination that the club was not a private facility, (2) set forth the facts underlying such determination, and (3) proposed terms of conciliation to correct the wrongs complained of. The letter ended with a request that the club inform the commission of its determination concerning the conciliation terms by July 1, 1971. On March 12, 1971, the club, through its officers, brought the present suit in the Superior Court for declaratory and injunctive relief against the commission. The interlocutory[2] and final decrees entered therein are the subjects of this appeal.

The first question which must be answered is whether it was error to overrule the commission's demurrer. Put another way, we must determine whether the Superior Court had jurisdiction to entertain the club's suit while proceedings against the club were pending before the commission. We begin by examining the statutory provisions governing that agency.

The commission is established under G. L. c. 6, § 56, as amended by St. 1950, c. 479, § 2, and its functions, powers and duties are set forth in G. L. c. 151B, §§ 2, 3, 5, 6, as amended. A reading of these sections indicates that the commission has been given broad jurisdiction to administer and effectuate the provisions of anti-discrimination statutes of the Commonwealth, including G. L. c. 272, §§ 92A and 98, at issue here. Under c. 151B, § 5, a person claiming to be aggrieved by an alleged violation of §§ 92A and 98 may file a complaint with the commission. Section 5 also sets forth the series of steps to be taken by the commission in handling the

---

[2]The record before us shows only an order overruling the commission's demurrer. All parties appear to have treated this order as the equivalent of an interlocutory decree.

364 Mass. 444                                                    447

East Chop Tennis Club *v.* Mass. Commn. Against Discrimination.

complaints: an investigating commissioner is assigned to investigate the complaint; if he finds from his investigation that there is probable cause to credit the complainant's allegations, he is to try to eliminate the unlawful practices complained of by "conference, conciliation and persuasion"; if these conciliatory measures fail to eliminate the practices (or in advance thereof if he finds the circumstances so warrant), the investigating commissioner shall cause to be issued and served on the person complained of (the respondent) a written notice of a hearing on the complaint, to be held before the commission.

The same section then sets forth the procedures to be followed at the commission hearing. These include the right of the respondent to appear with or without counsel and submit testimony, and the discretionary power of the commission to permit the complainant to intervene and present testimony. Of relevance here also is the provision that the investigating commissioner shall not participate at the hearing except as a witness and shall not participate in the commission's deliberations on the case. If upon all the evidence submitted at the hearing the commission finds the respondent has engaged in certain discriminatory practices including those in violation of c. 272, §§ 92A and 98, it shall state its findings of fact, and shall order the respondent to cease and desist from the unlawful practices and to take such other affirmative steps as it deems necessary.

The right to judicial review of such an order issued by the commission is established in G. L. c. 151B, § 6. Under this section, a "complainant, respondent or other person aggrieved by such order" may initiate a proceeding in the Superior Court. That court shall review the commission's order or decision according to the standards for review established in G. L. c. 30A, § 14 (8), shall not consider any objection that was not raised before the commission except in extraordinary circumstances, and has the power to enter an order or decree enforcing, modifying, or setting aside in whole or in part the commission's order. The section gives the Superior Court exclusive initial jurisdiction over the

East Chop Tennis Club *v.* Mass. Commn. Against Discrimination.

review of such proceedings, with review of its decisions by this court in the same manner as in appeals in equity. In addition, § 6 sets forth the right of the commission to secure an order from the Superior Court to enforce its own decision or order.

As this summary of the statutory provisions makes clear, the Legislature has established a comprehensive scheme of administrative procedures and remedies which persons appearing before the commission must follow before seeking relief from the Superior Court. The club's bill shows that it sought judicial relief at the preliminary point when the commission's investigating commissioner had found probable cause to credit the complaint and had set terms of conciliation. The full commission had not held or even scheduled any hearing on the complaint, and obviously had not issued an order requiring the club to cease and desist from any acts or practices. Clearly the club failed to exhaust its administrative remedies under the statutory provisions outlined above before it brought the bill in the Superior Court. The question then becomes whether such failure is fatal to the club's suit for declaratory and injunctive relief.

Our court has long followed the rule that "[i]n the absence of a statutory directive to the contrary, the administrative remedies should be exhausted before resort to the courts." *Gordon* v. *Hardware Mut. Cas. Co.* 361 Mass. 582, 587 (1972), and cases cited therein.[3] The club argues, however, that the general rule does not apply in its case because proceedings for declaratory relief constitute an exception to the requirement of exhaustion. In support of this contention, it relies on a number of cases including *Meenes* v. *Goldberg,* 331 Mass. 668 (1954), where this court granted declaratory relief before the plaintiffs had pursued their administrative remedies.

In the *Meenes* case, the plaintiffs sought a declaratory decree with respect to the validity of a lien for sewer assess-

---

[3]See St. 1973, c. 939, which may provide such a "statutory directive to the contrary" with reference to cases arising under G. L. c. 93A, § 9, in the future.

364 Mass. 444                                            449

East Chop Tennis Club *v*. Mass. Commn. Against Discrimination.

ments. The plaintiffs were former owners of the property subject to the lien, and two of the defendants were successor owners of such property. Their dispute centered on the question of who was responsible for the lien in question, and the declaratory suit was brought to determine the validity of the lien on the land, not the validity of the assessment itself. The Superior Court entered a decree that the lien had been discharged. On appeal, the defendant city of Worcester argued that the court had no jurisdiction over the case because the statutory remedies of abatement and payment of the tax under protest were adequate. This court affirmed the Superior Court decree and held that the statutory language concerning exclusive remedies did not prevent it from granting equitable relief in certain circumstances, which it felt were present in that case. We pointed out that the statute establishing a procedure for declaratory relief provided an appropriate form of remedy, and said, at p. 691, "Commonly relief under . . . [G. L. c. 231A] should not be denied because of the possibility of some other form of remedy, if the case presented comes within the general scope of the chapter and no special reasons exist against the use of the declaratory process."

The rule of *Meenes* v. *Goldberg, supra,* has been followed in a long series of cases for declaratory relief also involving tax challenges. See, e.g., *Madden* v. *State Tax Commn.* 333 Mass. 734, 736-737 (1956); *Squantum Gardens, Inc.* v. *Assessors of Quincy,* 335 Mass. 440, 443 (1957); *Stow* v. *Commissioner of Corps. & Taxn.* 336 Mass. 337, 339-340 (1957); *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223, 235 (1961); *Massachusetts Assn. of Tobacco Distribs.* v. *State Tax Commn.* 354 Mass. 85, 87-88 (1968); *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps & Taxn.* 363 Mass. 685, 688 (1973). However, we have generally not extended its application to reach other types of cases involving different administrative agencies and procedures, although there are exceptions. See, e.g., *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 329 Mass. 243, 247 (1952) (controversy between

steamship authority and Department of Public Utilities concerning the scope, if any, of the latter's jurisdiction over the former; declaratory relief given without requiring exhaustion of remedies before the Department of Public Utilities).

Furthermore, even within the context of the tax cases themselves we have often emphasized that the ordinary requirement of exhaustion will be suspended only when the facts of a particular case raise important public questions whose resolution concerns or will affect more persons than the parties to the case. See *Squantum Gardens, Inc.* v. *Assessors of Quincy,* 335 Mass. 440, 443 (1957) (question concerning scope of municipal taxing power); *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps & Taxn.* 363 Mass. 685-688 (1973) (question concerning taxation of corporations undertaking redevelopment projects). See also *Sears, Roebuck & Co.* v. *Somerville,* 363 Mass. 756, 757-759 (1973). In the present case no such issue of general public concern has been raised. A determination by this court that the club is or is not a private club, and thus exempt or not exempt from the provisions of c. 272, §§ 92A and 98, would depend necessarily on the particular facts presented and would only resolve the specific dispute between the club and the commission.

Although apparently not true in the *Meenes* case, *supra,* there are "special reasons" to deny the use of the declaratory practice in this case. In G. L. c. 151B, the Legislature has given the commission broad powers to receive, investigate and act on complaints of discrimination. We will not lightly interfere with that mandate by permitting the court's judgment to be substituted for the commision's on issues that lie within the latter's designated field. To do so would render meaningless the administrative scheme enacted by the Legislature. See *Saint Luke's Hosp.* v. *Labor Relations Commn.* 320 Mass. 467, 470 (1946). A proceeding for declaratory relief in itself does not operate to suspend the ordinary requirement that a plaintiff exhaust his administrative remedies before seeking judicial relief. While c. 231A was intended as remedial legislation, giving a party a new and ad-

364 Mass. 444                                                                451

East Chop Tennis Club *v.* Mass. Commn. Against Discrimination.

ditional procedure for resolving controversies, see *Madden v. State Tax Commn.* 333 Mass. 734, 736-737 (1956), there is no indication that it was intended as an automatic substitute for administrative proceedings. Admittedly there is an ''actual controversy'' between the club and the commission over the question whether the club is ''a place of public accommodation.'' However, the existence of this dispute alone is insufficient reason to disrupt the ordinary administrative process.

In addition to its arguments with respect to the nature of declaratory proceedings, the club also seems to argue that exhaustion of its administrative remedies before the commission is unnecessary because the commission lacks jurisdiction. We do not agree.

We are not unmindful of decisions of this court holding that the exhaustion of administrative remedies is not always required when an agency's jurisdiction is challenged. In *Saint Luke's Hospital* v. *Labor Relations Commn.* 320 Mass. 467 (1946), in which the jurisdiction of the Labor Relations Commission over pending certification proceedings was challenged, we held that the hospital was not required to exhaust its remedies before the Labor Relations Commission before seeking declaratory relief from the court. 320 Mass. at 470-471. Accord, *Hathaway Bakeries, Inc.* v. *Labor Relations Commn.* 316 Mass. 136, 141-142 (1944). See *Wheaton College* v. *Labor Relations Commn.* 352 Mass. 731 (1967). These cases, however, were submitted on statements of agreed facts so that the Labor Relations Commission had no continuing fact finding role. The lack of jurisdiction of the commission appeared to be clear from the agreed facts, and was treated as a question of law which the court felt it could and should appropriately answer without requiring the plaintiffs to exhaust the available administrative remedies. As we stated in the *Saint Luke's Hosp.* case, *supra,* at p. 470, ''Where an administrative board is created by or is acting under a statute that is violative of the Federal or a State Constitution, or where the board is dealing with a matter that is clearly beyond the scope of its authority, then one may chal-

lenge the jurisdiction of the board by invoking the aid of the courts and need not wait until the board has made a final order.'' See also *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 329 Mass. 243 (1952), summarized above. There, the case was considered on the pleadings. However, the issue concerning the jurisdiction of the Department of Public Utilities over the steamship authority was treated by this court solely as a question of statutory interpretation which could be resolved on the facts alleged in the bill for declaratory relief and admitted in the answers. 329 Mass. at 247-250.

In the present case the determination of the club's public or private status depends on facts which the Legislature has directed the commission in the first instance to find, and not the courts. See G. L. c. 151B, §§ 5, 6, summarized above. It cannot be determined on the face of the bill and appendices that as a matter of law the plaintiff club is a private facility and that therefore the commission is without jurisdiction. The commission must be permitted to make its own findings of fact essential to its determination of jurisdiction. In ordinary circumstances, ''[w]here the contention is that . . . [a] board is acting beyond its jurisdiction, the board should have an opportunity to ascertain the facts and decide the question for itself . . ..'' *Saint Luke's Hosp.* v. *Labor Relations Commn., supra,* at 470. We must give effect to the orderly administrative process set up by the Legislature and permit the commission to make the decisions entrusted to it.

Furthermore, we cannot agree with the club's contention that further proceedings, apparently beyond the informal conference, would ''obviously be meaningless'' given the investigating commissioner's determination that the club was not a private facility. General Laws c. 151B, § 5, expressly provides that the investigating commissioner shall not participate in the commission's deliberations on the case. The hearing before the commission is clearly separate from any proceedings conducted by the investigating commissioner and the commission is to make its own independent determination of facts based on the evidence before it. Judicial

review of the commission's initial jurisdictional findings can be obtained if and when it issues a cease and desist order against the club. See *Jordan Marsh Co.* v. *Labor Relations Commn.* 312 Mass. 597, 602 (1942); *City Manager of Medford* v. *Labor Relations Commn.* 353 Mass. 519, 523-524 (1968).

The club has not alleged in its bill any facts which relieve it of the requirement that a plaintiff must pursue the opportunities available for administrative relief before seeking relief from the court. The club acted prematurely in bringing this suit for declaratory relief before exhausting its administrative remedies. It follows that the commission's demurrer should have been sustained. *Holyoke Water Power Co.* v. *Holyoke,* 349 Mass. 442, 446-447 (1965). *Goldblatt* v. *Corporation Counsel of Boston,* 360 Mass. 660, 662-664 (1971). *Gordon* v. *Hardware Mut. Cas. Co.* 361 Mass. 582, 587-588 (1972). It is therefore unnecessary to consider the merits of the club's bill, and we express no opinion on the question whether the club is or is not a place of public accommodation within the purview of G. L. c. 272, § 92A.

The interlocutory decree and the final decree are reversed. The case is remanded to the Superior Court. A new interlocutory decree is to be entered sustaining the commission's demurrer without leave to amend, and a new final decree is to be entered dismissing the bill.

*So ordered.*