Borenstein, J.
The plaintiff, Julie C. Bergan (“Bergan”), brought this action seeking judicial review of a decision of the Massachusetts Commission against Discrimination (“MCAD”) dismissing Bergan’s discrimination complaint versus the School Board of the Town of Bedford pursuant to G.L.c. 151B, §6.
In support of her petition, Bergan alleges that the MCAD erred as a matter of law and that their decision was arbitrary and capricious and not supported by the weight of the evidence. For the foregoing reasons, the MCAD’s decision is AFFIRMED.
BACKGROUND
For the purposes of this appeal the court is constrained by the administrative record and this court cannot pass on the credibility of witnesses nor look to evidence not in that record. See Ramsdell v. Western Massachusetts Bus Lines, 415 Mass. 673, 676 (1993). Consequently, the following recitation of the relevant facts is drawn from the administrative record:
Commencing in 1979 Bergan worked for the Town of Bedford (“Bedford”) as a social worker in the Bedford Public Schools. At the time, she was the only social worker so employed in Bedford and she worked a flexible schedule. Bergan has a Masters Degree in Clinical Psychology and is certified as a guidance counselor, school psychologist, adjustment counselor and elementary education teacher. As a social worker, Bergan’s duties included crisis intervention, home visits, group and individual counseling.
In 1979, Bergan was diagnosed as suffering from Crohn’s Disease, a chronic and noncurable illness which affects the gastrointestinal system. Bergan’s symptoms include diarrhea, fever, urgency of stool, occasional joint pains and eye inflammation. In addition, the symptoms of Bergan’s condition could become more acute with stress.
Some time in 1986 or 1987, Bergan learned that her position as a social worker was to be eliminated at the end of the 1986-87 school year. As a consequence of learning this fact, Bergan requested a meeting with Superintendent of Schools Joseph Buckley (“Buckley”) to discuss her reassignment. At that time, Bergan believed that, pursuant to the collective bargaining agreement, Bedford was obligated to assign her to an alternative, available position.
Over the course of her discussions with school officials, Bergan made clear her condition and her need for a reasonable accommodation as a consequence of Crohn’s disease. Bergan clearly stated her preference to be transferred to a guidance counselor position she believed would be available at the Lane Elementary School. Bergan expressed two reasons for wishing to be placed as a counselor: first, her training and experience were better suited to the position; and, second, the guidance counselor position would better accommodate her medical condition and the attendant medical complications, which would require her to leave a classroom unattended due to frequent bathroom visits.
Buckley expressed his intention to transfer Bergan to a new position and further indicated that the department would provide a reasonable accommodation, if her medical handicap interfered with the performance of her duties. In February of 1987, the school department requested that Bergan supply further medical evidence of her condition. The initial information provided was, according to Buckley, insufficient and he requested additional medical documentation of the condition.
*641 In April 1987, an additional meeting took place between Bergan, Buckley, representatives of the union and others for the purposes of discussing Bergan’s reassignment. It was clear by the spring that two positions — for which Bergan was certified — would be open at the Middle School in Bedford, one as a grade 6 teacher and another as a guidance counselor. The union representative and Bergan argued that the guidance counselor position would be more appropriate for Bergan given her medical condition. Specifically, they felt that it would be less disruptive if Bergan were not in a classroom setting with twenty students. In addition, they reiterated that the guidance counselor position was in line with Bergan’s training and prior work experience.
In considering possible options, Buckley discussed Bergan’s assignment with Laurence Aronstein (“Aronstein”), the principal at the John Glenn Middle School. Aronstein had known Bergan for several years, and had on occasion discussed her work performance with her. He first learned, however, that Bergan had Crohn’s disease during the 1986-87 school year. Aronstein expressed mixed feelings relative to Bergan’s capability as a social worker. He stated that Bergan worked well with some cases, but did not do so well with others. Further, he testified that she missed appointments with children and families and had particular difficulties with following up on cases. He also testified that Bergan was not able to keep client confidences and could not meet the schedule of a guidance counselor. Based on his reservations about Bergan’s abilities as a social worker, Aronstein recommended to Buckley that placing Bergan as a guidance counselor would have negative effects on the functioning of the school. [1]
Buckley decided to advertise the guidance counselor position, both inside and outside the school system. Bergan submitted a letter of application for the position. Upon receiving several resumes for the position, the chairperson of the Guidance Department, a Mr. Ciolfi, scheduled five candidates for interviews, Bergan was among those selected. The position of guidance counselor in the Middle School involved responsibility for 180 students and there was testimony that the position did not have a great deal of flexibility and involved some level of stress.[2]
On June 16, 1987, Bergan was interviewed by Aronstein and Ciolfi for the guidance counselor position. Aronstein described the interview as a difficult one, with Bergan voicing her concerns about the available positions. Following the interview, Aronstein and Ciolfi disqualified Bergan from consideration for the guidance counselor position. Ultimately, Aronstein selected Dr. Joan White to fill the guidance counselor position.[3] In July, the school department informed Bergan that she was no longer being considered for the guidance position.
On July 17, 1987, the school department informed Bergan of its decision to assign her to teach a sixth grade class at the Middle School for the 1987-88 school year. In an effort to accommodate her medical condition, Buckley instructed Aronstein to assign Bergan to the classroom nearest a female bathroom, which happened to be primarily used by students. Aronstein also arranged for coverage of Bergan’s classroom when it became necessary for her to leave the room. At that time, individuals assigned to the school’s office took primary responsibility for ensuring coverage. In addition, an effort was made to assign students with fewer disciplinary problems to Bergan’s class in a further effort to accommodate her condition.
There was testimony, however, that early in the school year Bergan informed another teacher, Sal Fiamara, that she did not want the sixth grade faculty to cover her classroom when she needed to leave. Fiamara testified that he tried to clarify the situation by holding a meeting with the sixth grade staff. At that meeting, Bergan told the others that she preferred to buzz the administrative staff for coverage. A further meeting was held with Aronstein in an effort to resolve the coverage issue. Aronstein resolved the matter by instructing Bergan to follow the plan for coverage as it had originally been devised, specifically using the sixth grade staff.[4] In addition to the coverage problem, Bergan disliked using the student bathroom which was closest to her assigned classroom. Instead, she used faculfy bathrooms which were farther from her class than the bathroom used by students.
On October 20, 1987, an additional meeting was held between Bergan, her attorney, Buckley, and representatives of the Mass. Teacher’s Association. At the meeting, bathroom issues and sick time coverage were discussed. Relative to the bathroom, Buckley offered to extend the walls and place a lock on one of the bathroom stalls exclusively for Bergan’s needs in the student’s bathroom next to her class. Bergan, however, refused to accept the modification or use of a lock.[5]
From the fall of 1987, Bergan’s symptoms worsened. She experienced great difficulties in the classroom, and would often leave without waiting for coverage. During the early part of the school year, Bergan experienced several absences due to illness. Moreover, she failed to grade student work or to meet certain requirements established for all teachers at the school. In a meeting in November 1987, Aronstein discussed his concerns about her performance with Bergan. Included among these concerns were complaints from parents and students about organization and lack of reports. After November 16, 1987, Bergan failed to return to the classroom as a teacher at the Middle School.
On November 24, Aronstein received a letter from a Dr. Berk stating that Bergan was unable to work due to the “exacerbation of Crohn’s disease.” An attorney *642 representing Bergan wrote another letter on December 10 informing Aronstein that due to her medical condition Bergan was under orders not to return to work. On January 13, 1988, Dr. Berk wrote a letter in which he stated that Bergan would return to work no later than February 22, 1988. On March 1, 1988, Dr. Berk wrote another letter stating that Bergan would return to work before “June 1st.”[6] Between 1988 and 1989, various medical reports were submitted by Bergan that stated that the Crohn’s disease was exacerbated by the stress of classroom teaching.
On July 28, 1987, Bergan filed her initial complaint with the MCAD. In that complaint, she alleged that the Bedford Public Schools discriminated on the basis of her physical handicap, namely Crohn’s disease. Specifically, she claimed that Bedford failed to provide a reasonable accomodation for her condition in the form of a guidance counselor position.
The public hearing of the matter was conducted over the course of 13 days between October 1993 and April 1994. On June 29, 1994, the hearing commissioner issued her decision dismissing Bergan’s complaint. Bergan appealed that decision to the full commission, which affirmed the Hearing Commissioner’s decision. It is from that decision that Bergan now appeals to this court.
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God v. State Bldg. Code Comm’n, 11 Mass.App.Ct. 333, 334 (1981), citing Almeida Bus Lines, Inc. v. Department of Pub. Utils., 348 Mass. 331, 342 (1965). In reviewing an agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988), Quincy City Hosp. v. Labor Relations Comm’n, 400 Mass. 745, 748-49 (1987). The court may not substitute its judgment for the MCAD’s, an administrative agency, when the decision is supported by substantial evidence. Southern Worcester County Regional Vocational Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982), citing Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n, 372 Mass. 152, 154 (1977). Moreover, a court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm’n, 385 Mass. 651, 657 (1982).
Pursuant to G.L.c. 151 B, §6, the court must review the decision of the hearing commissioner in accordance with the standard of review set forth in G.L.c. 30A, §14. Section 14 of Chapter 30A of the Massachusetts General Laws provides that any person aggrieved by a final decision of an agency in an adjudicatory proceeding may seek review of the decision in the superior court. G.L.c. 30A, §14 (1994 ed.). Specifically, the court may review and either affirm, reverse, remand, compel action, or modify a state’s administrative decision if the court determines “that the substantial rights of any party may have been prejudiced . . .” G.L.c. 30A, §14(7) (1994 ed.).
“In G.L.c. 151B, the Legislature has given the MCAD broad powers to receive, investigate and act on complaints of discrimination.” East Chop Tennis Club v. Massachusetts Comm’n against Discrimination, 364 Mass. 444, 450 (1973). A reviewing court must “not lightly interfere with that mandate by permitting [its] judgment to be substituted for the commission’s on issues that lie within the latter’s designated field,” for “[t]o do so would render meaningless the administrative scheme enacted by the Legislature.” Id. Accordingly, the court must defer to the fact-finding function of the Commission, including its right to draw reasonable inferences from the facts found, where there is substantial evidence to support its findings and there is no error of law. Talbert Trading Co. v. Massachusetts Commission against Discrimination, 37 Mass.App.Ct. 56, 58 n.2 (1994), citing Wheelock College v. Massachusetts Comm’n against Discrimination, 371 Mass. 130, 132-33 (1976), Springfield Bd. of Police Comm’rs v. Massachusetts Comm’n against Discrimination, 375 Mass. 782, 782 (1978), Smith College v. Massachusetts Comm’n against Discrimination, 376 Mass. 221, 224 (1978), see also G.L.c. 30A, §14(7). “Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.” Bournewood Hosp., Inc. v. Massachusetts Comm’n against Discrimination, 371 Mass. 303, 317 (1976), citing G.L.c. 30A, §1(6).
The issue before the court is whether the MCAD record is legally sufficient to support the MCAD’s decision to dismiss Bergan’s complaint. Bergan’s claims of error may be summarized as follows:
(1) MCAD erred in not finding that the Bedford Public Schools failed to make accommodation in accordance with applicable anti-discrimination laws;
(2) MCAD erred in concluding that the Bedford Public Schools did not discriminate against Bergan due to her medical handicap, Crohn’s disease, and,
(3) MCAD erred in not finding that the Bedford Public Schools created a hostile work environment and thereby constructively discharged Bergan from her position as a school teacher.
*643 1.Guidance Counselor Position as a Reasonable Accommodation
It is well settled that reasonable accommodation does not require an employer to “disregard or waive an employee’s inability to perform an essential function of the job.” Cox v. New England Telephone and Telegraph Co., 414 Mass. 375, 383 (1993).
Here, Bergan’s argument requires a conclusion by this court that there was but one accommodation that was reasonable, that being to give her a position as a guidance counselor. However, there was ample evidence, which the Hearing Commissioner found credible, that Bergan was ill-suited and not the best candidate for the position of guidance counselor. In addition, the evidence is equally clear that once Bergan was made a school teacher great effort and consideration was given to finding ways to accommodate her specific needs.
2.Claim of Discrimination in the Hiring of a Guidance Counselor
Next, Bergan argues that MCAD erred as a matter of fact and law in concluding that the decisions to hire other individuals for guidance counselor positions were not discriminatoiy. This claim clearly falls within that category of discrimination claims designated under the rubric of “disparate impact” claims. In applying anti-discrimination statutes in a disparate treatment case, Massachusetts follows the three-stage order of proof used by the Federal courts under the Federal anti-discrimination provisions of Title VII. Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 440 (1995), Wheelock College v. Massachusetts Comm’n against Discrimination, 371 Mass. 130, 134-36 (1976). See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
In the first stage of proof, “the plaintiff has the burden to show by a preponderance of the evidence a prima facie case of discrimination.” Blare, supra at 441. This burden is met with evidence that (1) the plaintiff is a member of a class protected by G.L.c. 15 IB; (2) he performed his job at an acceptable level; (3) he was terminated; and (4) his employer sought to fill the plaintiffs position by hiring another individual with qualifications similar to the plaintiffs. Id. Upon meeting that preliminary showing, the burden shifts to the employer to demonstrate a nondiscriminatory reason. Finally, if the employer meets its burden, the impacted individual must establish actual discrimination. Id.
In this case, the Hearing Commissioner appropriately applied the relevant standard. At the outset, she found that Bergan established a prima facie case of discrimination and then shifted the burden. There is ample evidence to support shifting the burden back to Bergan based upon the credible and ample evidence presented that she was not well-suited for the position of guidance counselor. Bergan has failed to meet her burden and her arguments before this court that any evidence presented below was rebutted by her witnesses or inadmissible as hearsay are simply insufficient. See School Committee of Brockton v. Massachusetts Commission against Discrimination, 423 Mass. 7, 15 (1996) (hearsay evidence can be admitted in an administrative proceeding).[7]
3.Failure of the MCAD to Consider the Collective Bargaining Agreement
In her decision, the Hearing Commissioner refused to address the issue of the impact of the collective bargaining agreement. She reasoned that the agreement was outside the scope of the MCAD’s consideration. Although the union agreement itself was not discussed in the Commissioner’s findings, it is axiomatic that resort to a collective agreement must be made pursuant to that agreement. Consequently, it was not erroneous for the Commissioner to determine that as a matter of law she could not look to the dictates of the union agreement to resolve a case under G.L.c. 15 IB. There was ample evidence before the Commissioner upon which Bergan’s claims of discrimination could be resolved.
ORDER
For the foregoing reasons, it is hereby ORDERED that the decision of the Massachusetts Commission against Discrimination dismissing the plaintiffs complaint against the School Department of the Town of Bedford is AFFIRMED.

 Aronstein also testified that at least five faculty members expressed concern about Bergan’s inability to keep matters discussed with her clients confidential. In addition, there was concern stated by others to Aronstein about follow-up, scheduling and referral problems with Bergan.

 The hearing officer also found that the position of classroom teacher and guidance counselor at the Middle School each consisted of forty class periods, each of which is forty minutes long.

 In her decision, the Hearing Commissioner expressly found that Dr. White was more qualified than Bergan for the guidance counselor position.

 Although Bergan contradicts this testimony, the hearing officer credited Fiamara’s and Aronstein’s testimony relative to the problems encountered as a result of Bergan’s actions and statements in opposition to coverage being provided by the sixth grade staff.

 As a result of the meeting various measures were agreed to, they included: (1) Bergan would not have to call for a substitute by 6:30 a.m. as required of other teachers; (2) if Bergan became sick during the school day she would only be charged sick time for the fraction of the day she was actually gone; (3) Bergan’s request for a classroom aide was denied; (4) Bergan was to simply buzz the intercom and leave when she had to go to the bathroom; (5) a custodial workroom directly adjacent to her classroom would be remodeled into a private bathroom for Bergan. It should be noted that Bergan would not agree to the remodeling of the bathroom until February 12, 1988, and that work never took place as Bergan did not return to work.

 It is interesting to note that since February 1988, there have been four guidance counselor positions in the Bedford school system and Bergan has submitted applications for *644 each opening. Buckley testified that he has not considered Bergan because he felt she was not capable of performing the functions required.

 Although hearsay evidence was admitted, given the length and scope of the hearing in this case, the Hearing Commissioner heard abundant nonhearsay evidence upon which to base her decision.