377 F.3d 1099
 Andrew E. WERFT, an Arizona resident, Plaintiff-Appellant,
v.
DESERT SOUTHWEST ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH, an Arizona non-profit corporation; Vista De La Montana United Methodist Church, an Arizona non-profit corporation; John Does, I-V; Jane Does, I-V; Black and White Corporation, I-V; Black & White Partnership(s), I-V, Defendants-Appellees.
 No. 03-15545.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 2004.
 Filed July 30, 2004.
 
 David L. Abney, Skousen, Skousen, Gulbrandsen & Patience, P.C., Mesa, Arizona, for the plaintiff-appellant.
 Gordon Lewis, Jennings, Strouss & Salmon, P.L.C., Phoenix, Arizona, for the defendants-appellees.
 Appeal from the United States District Court for the District of Arizona; Frederick J. Martone, District Judge, Presiding. D.C. No. CV-02-02617-FJM.
 Before: FERNANDEZ, THOMAS, and CALLAHAN,* Circuit Judges.
 PER CURIAM:
 
 
 1
 We must decide whether the claim of a minister, seeking damages from his church for employment discrimination based on a failure to accommodate his disabilities, falls within either the ministerial exception first articulated in McClure v. Salvation Army, 460 F.2d 553 (5th Cir.1972), or the theory of Bollard v. California Province of the Society of Jesus, 196 F.3d 940 (9th Cir.1999) (sexual harassment claims fall outside ministerial exception).
 
 I. Background
 
 2
 A pastor and minister of the Vista de la Montana United Methodist Church ("the Church") in Tucson, Arizona, Andrew E. Werft ("Werft") alleges that despite having Attention Deficit Disorder ("ADD"), dyslexia, and certain heart problems, he was able to perform his ministerial duties with minor accommodations. The Church, however, refused to make any accommodations and instead "forced him to resign from his pastoral position...."
 
 
 3
 Werft filed suit in state court in August 2002, alleging that the Church discriminated against him by failing to accommodate his needs. Specifically, Werft claims he was forced to resign from his position and the Church's actions amounted to a breach of contract and violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, and the Arizona Civil Rights Act.[1] Werft sought reinstatement and damages. The Church removed to district court and in January 2003, moved to dismiss, reasoning that the First Amendment precluded civil court review of the Church's ministerial employment decisions. After a full hearing, the district court granted the motion to dismiss. Werft appeals, now solely seeking money damages, attorneys' fees, and costs.
 
 II. Standard of Review
 
 4
 We review a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) de novo. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir.1998). In reviewing the complaint, we take all allegations as true and construe them in the light most favorable to the plaintiff. See id.; see also Fireman's Fund Ins. Co. v. City of Lodi, 302 F.3d 928, 939 (9th Cir.2002).
 
 III. The Ministerial Exception to Title VII
 
 5
 The "ministerial exception," as described in this court's decision in Bollard, "insulates a religious organization's employment decisions regarding its ministers from judicial scrutiny under Title VII." 196 F.3d at 944. It derives from the Free Exercise[2] and Establishment[3] Clauses of the First Amendment and is intended to protect the relationship between a religious organization and its clergy[4] from "constitutionally impermissible interference by the government." Id. at 945. Specifically, because clergy represent a religious institution to the people, a religious institution must retain unfettered freedom in its choice of clergy. Id. at 946.
 
 
 6
 Both before and after Bollard, courts have widely refused to allow Title VII suits against religious organizations under the ministerial exception.[5] Yet, in Bollard, we held that a Title VII claim for sexual harassment of a novice Jesuit priest could proceed because it would violate neither the Free Exercise Clause nor the Establishment Clause, reasoning that Bollard stated a claim notwithstanding the ministerial exception because the Jesuit Order was "neither exercising its constitutionally protected prerogative to choose its ministers nor embracing the behavior at issue as a constitutionally protected religious practice...." Id. at 944. In addition, allowing the case to go forward did not raise any significant issues about government entanglement with religion under the Establishment Clause. Id. at 948-50; see also Elvig v. Calvin Presbyterian Church, 375 F.3d 951 (2004) (holding that a church may be vicariously liable for alleged sexual harassment "which is not a protected employment decision."). Werft now argues that, under the reasoning in Bollard, his Title VII employment discrimination claim should also be allowed to proceed. We determine Werft's claims are more similar to the pre-Bollard Title VII cases, where claims were disallowed because they would require a civil court to inquire into religious justifications for personnel decisions, than the Title VII sexual harassment claim at issue in Bollard.
 
 A. The Free Exercise Clause
 
 7
 The Free Exercise Clause "protects the power of religious organizations `to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" Bollard, 196 F.3d at 945(quoting Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church, 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952)). One such protected matter of self-governance is a religious institution's freedom to choose its clergy. Id. at 947-48. Bollard declared that we must apply a three-part balancing test to determine whether application of a statute would violate the Free Exercise Clause. We must consider:
 
 
 8
 (1) the magnitude of the statute's impact upon the exercise of the religious belief, (2) the existence of a compelling state interest justifying the burden imposed upon the exercise of the religious belief, and (3) the extent to which recognition of an exemption from the statute would impede the objectives sought to be advanced by the state.
 
 
 9
 Id. at 946; see also Wisconsin v. Yoder, 406 U.S. 205, 214-15, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); Sherbert v. Verner, 374 U.S. 398, 402-03, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); but see Employment Div., Dep't of Human Res. v. Smith, 494 U.S. 872, 882-84, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990).
 
 
 10
 There is no question that elimination of discrimination — the goal of Title VII — is a compelling state interest "of the highest order." Rayburn, 772 F.2d at 1169; see also E.E.O.C. v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 620-22 (9th Cir.1988); E.E.O.C. v. Pacific Press Pub. Ass'n, 676 F.2d 1272, 1280 (9th Cir.1982) abrogation on other grounds recognized in Am. Friends Serv. Comm. Corp. v. Thornburgh, 951 F.2d 957, 960 (9th Cir.1991). It is also clear that exempting religious organizations would impede the Title VII objective of eliminating workplace discrimination.
 
 
 11
 But even in pursuit of a compelling state interest, the balancing test contemplates that some statutes may still have such an adverse impact on religious liberty as to render judicial review of a Church's compliance with the statute a violation of the Free Exercise Clause. These are the cases where the burden on religious liberty is simply too great to be permissible. See Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 713, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (some religious interests are so strong that no compelling state interest can justify government intrusion).
 
 
 12
 Bollard itself states that requiring a church to articulate a religious justification for a personnel decision, such as firing a minister, is one such way in which government may not constitutionally interfere with religion. 196 F.3d at 946(citing Milivojevich, 426 U.S. at 717, 96 S.Ct. 2372); see also Rosati v. Toledo, Ohio Catholic Diocese, 233 F.Supp.2d 917, 922(N.D.Ohio 2002) (even if the Diocese's decision to discharge a nun was based on her disability, suit could not go forward because defendants were exercising their constitutionally protected prerogative to choose their minister). This is the heart of the ministerial exception.
 
 
 13
 Werft alleges he was "forced to resign" because the Church failed to make reasonable accommodations for his disabilities. Consequently, his claim clearly fits into this long recognized category of ministerial "personnel decisions" exempt from consideration by the civil courts.[6] See Elvig, 375 F.3d at 2 (explaining that to the extent harassment and retaliation claims "implicate the Church's ministerial employment decisions, those claims are foreclosed."). And it is the decision itself which is exempt — the courts may not even look into the reasoning. See Bollard, 196 F.3d at 946 ("[T]he ministerial relationship lies so close to the heart of the church that it would offend the Free Exercise Clause simply to require the church to articulate a religious justification for its personnel decisions."); Young, 21 F.3d at 186-87.
 
 
 14
 Werft also alleges that while still employed by the Church, the Church's refusal to accommodate his disabilities created a hostile workplace environment, and that this claim is different from his constructive discharge claim. Specifically, he asserts that even if his constructive discharge claim must be dismissed under the ministerial exception, his failure to accommodate claim should still be allowed to proceed because it is not a personnel decision akin to hiring or firing.
 
 
 15
 The ministerial exception does not apply solely to the hiring and firing of ministers, but also relates to the broader relationship between an organized religious institution and its clergy, termed the "lifeblood" of the religious institution. McClure, 460 F.2d at 559 ("The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern." (emphasis added)). Although sexual harassment of a novice priest is not a part of that relationship, as determined in Bollard, a minister's working conditions and the church's decision regarding whether or not to accommodate a minister's disability, are a part of the minister's employment relationship with the church. McClure, 460 F.2d at 559;[7] see also Young, 21 F.3d at 187-88 (holding that Free Exercise Clause precluded Title VII sex and race discrimination claim for denial of promotion and discontinuance of minister status); Catholic Univ. of Am., 83 F.3d at 463-65 (nun's Title VII sex discrimination suit, where nun denied tenure but not fired, barred by ministerial exception).
 
 
 16
 Bollard's case, which we determined was more similar to a negligence claim than a typical Title VII employment discrimination claim, did not implicate the employment relationship protected under the ministerial exception. Bollard, 196 F.3d at 947-48. A religious institution's freedom to choose its representative and related employment matters were not at issue. Id.; compare Elvig, 375 F.3d at 22 (explaining that First Amendment problems arise where a church's "ministerial choices" are part of the alleged harassment). We cannot say the same here. If allowed to proceed, the Church would necessarily be required to provide a religious justification for its failure to accommodate and this is an area into which the First Amendment forbids us to tread.
 
 
 17
 We thus determine that Werft's claims, grounded in the church's failure to accommodate his disabilities while he was still employed, are a part of the employment relationship between church and minister. The district court therefore properly dismissed those claims.
 
 B. The Establishment Clause
 
 18
 Because we find that the Free Exercise Clause requires dismissal of Werft's suit, we need not consider the Establishment Clause argument.
 
 IV. Conclusion
 
 19
 The ministerial exception applies to Werft's claims; thus the Free Exercise Clause of the First Amendment bars this suit. The district court properly granted the Church's motion to dismiss.
 
 
 20
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 At argument, the panel consisted of Judges Fernandez, Hawkins, and Thomas. Judge Hawkins later recused himself and the Clerk of the Court drew Judge Callahan to replace him. Judge Callahan read the briefs, reviewed the record, and listened to the tape of oral argument
 
 
 [1]
 Because the ministerial exception is based in the First Amendment, we make no distinction between the various federal and state law claims. Just as there is a ministerial exception to Title VII, there must also be one to any federal or state cause of action that would otherwise impinge on the Church's prerogative to choose its ministersSee Bollard, 196 F.3d at 950.
 
 
 [2]
 "Congress shall make no law ... prohibiting the free exercise [of religion]." U.S. CONST. amend. I
 
 
 [3]
 "Congress shall make no law respecting an establishment of religion .... " U.S. CONST. amend. I
 
 
 [4]
 The threshold determination of whether Werft can properly be considered a "minister" is not in dispute in this case. Werft is a minister within contemplation of the ministerial exception and neither party argues to the contrarySee Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164, 1169 (4th Cir.1985) (a "minister" is one who holds a position important to the spiritual and pastoral mission of the church).
 
 
 [5]
 See, e.g., Alicea-Hernandez v. Catholic Bishop of Chicago, 320 F.3d 698, 703 (7th Cir.2003) (once the exception is found to apply to the position in question, the nature of the claims is not relevant); Gellington v. Christian Methodist Episcopal Church, Inc., 203 F.3d 1299, 1304 (11th Cir.2000) ("Investigation... into a church's employment of its clergy would almost always entail excessive government entanglement into the internal management of the church."); Combs v. Cent. Tex. Annual Conference of United Methodist Church, 173 F.3d 343, 350 (5th Cir.1999) (holding that Title VII claims by ministers against their church necessarily require "secular authorities [to] necessarily intrude into church governance in a manner that would be inherently coercive, even if the alleged [misconduct] were purely nondoctrinal"); E.E.O.C. v. Catholic Univ. of Am., 83 F.3d 455, 467 (D.C.Cir.1996) (holding that Religion Clauses bar nun's Title VII claim for denial of university tenure); Young v. N. Ill. Conference of United Methodist Church, 21 F.3d 184, 187-88 (7th Cir.1994) (holding that Free Exercise Clause precluded Title VII sex and race discrimination claim for denial of promotion and discontinuance of minister status); Scharon v. St. Luke's Episcopal Presbyterian Hosps., 929 F.2d 360, 363 (8th Cir.1991) ("To allow Scharon's case to continue would necessarily lead to the kind of inquiry into religious matters that the First Amendment forbids."); Rayburn, 772 F.2d at 1169-72 (holding that Religion Clauses barred Title VII sex and race discrimination claims for denial of pastoral position).
 
 
 [6]
 Indeed, theBollard court said: "[T]his is not a case about the Jesuit order's choice of representative, a decision to which we would simply defer without further inquiry. Bollard does not complain that the Jesuits ... engaged in any [ ] adverse personnel action." 196 F.3d at 947; see also Rosati, 233 F.Supp.2d at 922.
 
 
 [7]
 While not explicitly mentioning accommodation of disability in relation to working environment, theMcClure court elucidated that: "Just as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection. It is unavoidably true that these include the determination of a minister's salary, his place of assignment, and the duty he is to perform in the furtherance of the religious mission of the church." Id. (emphasis added).